# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN PODGUSKI | : | CIVIL ACTION |
|     **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[1] Comm. of | : | NO. 21-cv-02752-RAL |
| Social Security, | : | |
|     **Defendant.** | : | |

**RICHARD A. LLORET**
**U.S. MAGISTRATE JUDGE**                                    **April 10, 2023**

## MEMORANDUM OPINION

The Commissioner of Social Security, through the decision of an Administrative Law Judge ("ALJ"), denied Mr. Podguski's application for disability insurance benefits ("DIB"). Because I find no error, I will affirm the ALJ's decision.

## PROCEDURAL HISTORY

On July 24, 2015, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging disability beginning May 25, 1996, due to impairments including attention deficit hyperactivity disorder (ADHD) and Asperger's Syndrome. R. 303-11, 389. The state agency denied the application at the initial review level. R. 125. Mr. Podguski requested and received an administrative hearing, initially held August 3, 2017, at which Mr. Podguski requested a continuance to obtain legal representation. R. 70-77. Two more hearings were held, with the ALJ sending Mr. Podguski for a consultative examination after the February 2, 2018, hearing, and finally convening on

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021 and is therefore substituted for Andrew Saul as Defendant pursuant Federal Rule of Civil Procedure 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

November 13, 2018. R. 61-68, 79-89. The ALJ heard testimony from Mr. Podguski, (now represented by counsel), Plaintiff's mother, and a vocational expert. *Id*. The ALJ issued an unfavorable decision on December 27, 2018, but the Appeals Council remanded the case for a new hearing on May 26, 2020. R. 120-23.

A new ALJ conducted a hearing on October 2, 2022, during which Plaintiff (still represented by counsel), and a vocational expert testified. R. 34-59. This second ALJ filed her decision on October 19, 2020, finding that Mr. Podguski could perform a range of unskilled work at all exertional levels and was not disabled. R. 10-19. Mr. Podguski requested review by the Appeals Council. R. 300-02. The Appeals Council upheld the decision, denying review on April 21, 2021. R. 1-6. The ALJ's decision of October 19, 2020, found Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, but with non-exertional limitations of: unskilled, simple, routine tasks; simple decisions; occasional changes in the workplace; and occasional interaction with co-workers and supervisors and no direct public interaction. With the Appeals Council's denial of review, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. R. 14. Mr. Podguski timely filed a request for review in this court on June 23, 2021. Doc. No. 2.

## FACTUAL BACKGROUND

### A. The Claimant's Background

Mr. Podguski was 19 years old on the date of his application for benefits, making him a "younger person" under the regulations. R. 18. He graduated from high school and can communicate in English. R. 39-40. Mr. Podguski has no past relevant work. R. 57.

**B. The ALJ's Decision**

The ALJ found that Mr. Podguski was not eligible for DIB because he has not been under a disability, as defined by the Social Security Act. R. 19. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[2]

At step one, the ALJ concluded that Mr. Podguski had not engaged in substantial gainful activity ("SGA") since June 18, 2015, the alleged onset date. R. 12. At step two, the ALJ determined that Mr. Podguski had the following severe impairments: autism spectrum disorder (ASD); anxiety disorder; post-traumatic stress disorder (PTSD); attention deficit hyperactivity disorder (ADHD); and mood disorder. *Id.* The ALJ noted that although Mr. Podguski is 5'6" tall and weighs about 200 pounds, making his body mass index (BMI) score 35.5, there was no evidence of record indicating that Plaintiff's weight "has more than a minimal effect on the claimant's ability to perform basic work activities; therefore, the [ALJ] finds that it is not considered severe." R. 12-13. Mr. Podguski does not dispute the ALJ's analysis at steps one and two. At step three, the ALJ compared Mr. Podguski's impediments to those contained in the Social Security Listing of Impairments ("listing").[3] Specifically, the ALJ compared Mr. Podguski's

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v).

[3] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ

severe impairments to the listings 12.04, 12.06, 12.10, and 12.15 (Depressive, bipolar, and related disorders; anxiety and obsessive-compulsive disorders; autism spectrum disorder; and trauma- and stressor-related disorders, respectively). The ALJ found that Mr. Podguski did not meet any listing criteria, R. 13-14. Mr. Podguski does not dispute this finding.

Prior to undertaking her step four analysis, the ALJ assessed Mr. Podguski's residual functional capacity ("RFC"), or "the most [Mr. Podguski] can [] do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1). The ALJ found that Mr. Podguski had the RFC to perform work at any exertion level, as defined in 20 C.F.R. 404.1567(b), but with the following non-exertional limitations: unskilled, simple, routine tasks; simple decisions, occasional changes in the workplace; and occasional interaction with co-workers and supervisors, and no direct public interaction. R. 14. At step four, the ALJ found that Mr. Podguski does not have relevant past work. R. 18. At step five, based on the RFC and testimony from a vocational expert, the ALJ determined that Mr. Podguski would be able to perform the requirements of representative occupations such as laundry laborer, hand packer, and housekeeper/cleaner. R. 18.  Because these jobs exist in significant numbers in the national economy, the ALJ concluded that Mr. Podguski was not disabled. R. 19.

Mr. Podguski contends the ALJ erred by determining that the Plaintiff was not disabled. Plaintiff's Brief (Pl. Br.) at 2. Plaintiff contends that the evidence in the record supports a finding that "the Plaintiff would need frequent reminders how to perform tasks after the standard learning period for a job," making him incapable of maintaining

---

determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id.*

any work. Pl. Br. at 5, citing R. 57. The record citation is to the ALJ's second and third

hypotheticals posed to the vocational expert (VE) at the October 7, 2020, hearing:

> Q.  If you assume an individual would end up being off-task and unproductive 15
>     to 20% of the day as a result of frequent lapses in focus and concentration,
>     would that individual be able to maintain any work?
>
> A.  No.
>
> Q.  If an individual would need frequent reminders on how to perform job tasks,
>     and if we assume that were even after the standard learning period for that
>     job, would that individual be able to maintain any work?
>
> A.  No.

R. 57-58.

The Commissioner responds that the record contains sufficient evidence to

uphold the ALJ's decision. Commissioner's Response (Com. Res.) at 1, 2, 4. Plaintiff did

not file a reply.

## STANDARDS OF REVIEW

My review of the ALJ's decision is deferential. I am bound by her findings of fact

to the extent those findings are supported by substantial evidence in the record. *Knepp*

*v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d

Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to

determining whether substantial evidence supports the ALJ's decision. *Hartranft v.*

*Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision

is supported by substantial evidence, her disability determination must be

upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. §

405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

## DISCUSSION

### The ALJ did not err by deciding that Mr. Podguski did not prove he was disabled during the relevant period.

Mr. Podguski claims the ALJ should have found him disabled because the record supports a finding that Plaintiff needs frequent reminders in order to stay on task, precluding employment under the VE's testimony. Pl. Br. at 4. The specific evidence Plaintiff cites is Plaintiff's testimony that he cannot stay focused if given too many tasks, (R. 44), combined with records of Concern Counseling Services that diagnose Plaintiff

with anxiety disorder, ADHD, mood disorder and autism disorder, as well as a GAF score of 50 on April 21. 2015. (R. 545-681).[4] Pl. Br. at 4. Plaintiff acknowledges that the only other GAF score in the record, a "subsequent" score recorded by Concern Counseling, was 65. *Id.* Plaintiff argues that these records support a finding that Mr. Podguski "has issues with maintaining focus and completing simple tasks without a reminder which are clearly linked to his severe impairments of ADHD and anxiety disorder." *Id.* Therefore, the Plaintiff alleges, the ALJ should have accepted the VE's testimony that Plaintiff would be unable to maintain employment because he would be off-task and lose focus for too much of the workday, and would require too many reminders to maintain employment, as verified by the VE. Pl. Br. at 5. I disagree. Mr. Podguski's brief does not specify particular findings in the treatment records (or the expert opinions) that support his contention that Plaintiff would require too many reminders to maintain employment, and my review of the entire medical file reveals none. Instead, the brief merely suggests that because Plaintiff reported in his testimony that he finds it difficult to maintain focus if given "too many suggestions," that he is unable to work. Pl. Br. 4.

It is not enough to simply allege that the ALJ should have accepted a Plaintiff's testimony. A plaintiff must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988) (quoting *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)); *see also* 42 U.S.C. § 423(d)(1)(A). "Mere presence of a disease or

---

[4] Plaintiff pin cites the GAF score of 50 at R. 552-56. He provides no other specific citation to the 136 pages of records submitted by Concern Counseling.

impairment is not enough. A claimant must show that his disease or impairment caused functional limitations that precluded him from engaging in any substantial gainful activity." *Walker v. Barnhart*, 172 Fed. Appx. 423, 426 (3d Cir. 2006). *See also Showell v. Colvin*, No. CV 14-7081, 2016 WL 3599569, at *2 (E.D. Pa. July 1, 2016).

Plaintiff's argument here does not meet this requirement. Rather than providing evidence that Mr. Podguski would be unable to work, the medical records show that he has been treated successfully, for many years, with Strattera and Topomax, and that he has received counseling to assist him in identifying work he would like to do, and then making a plan to obtain appropriate training for such a job. Initially, the records document Mr. Podguski taking online college classes in mathematics in the hope of becoming a math teacher. R. 594. In later records, Plaintiff discussed training to be a cook. R. 677. There is nothing in these medical records that suggest Plaintiff could not successfully maintain work, despite his diagnoses of ADHD, anxiety disorder, and Asperger's Syndrome.

Mr. Podguski argues in vague terms that his treatment records and the Plaintiff's testimony regarding his symptoms are "entirely consistent," confirming "that the Plaintiff has issues with maintaining focus and completing simple tasks without a reminder." Pl. Br. at 4. My review of the medical records, however, reveals no such confirmation, and Plaintiff's brief points me to none. Mr. Podguski's argument nevertheless proceeds by suggesting that the conclusion he maintains is established— that he cannot maintain sufficient focus to complete tasks—requires a finding that the ALJ erred when she did not rely on the alternate hypothetical that she posed to the VE. R. 57.

In her first hypothetical, the ALJ included limitations to unskilled work; simple, routine tasks; making simple decisions; tolerating only occasional changes in the workplace; occasional interaction with coworkers and supervisors; and no direct public interaction. *Id*. The VE was able to provide three representative jobs in sufficient numbers. *Id*. The ALJ then added hypothetical conditions of fifteen to twenty percent of the day is unproductive as a result of frequent lapses in focus and concentration. The VE testified this would be work-preclusive. *Id*. Likewise the VE found that a hypothetical individual requiring "frequent reminders" after the individual had been provided "the standard learning period," would not be able to maintain employment. R. 57-58.

The Third Circuit discussed in *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), how ALJ's should handle hypothetical questions to vocational experts:

> Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but "cannot reject evidence for no reason or for the wrong reason" (a principle repeated in *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir.1993); Reg. § 929(c)(4)). Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it (Reg. § 929(c)(3)).

*Id*. at 554.

Applying this guidance to claims, ALJ's routinely pose multiple hypotheticals to testifying vocational experts, each adding restrictions, until the vocational expert advises that the impairments are work preclusive. At the hearing stage, however, ALJ's have frequently not made final decisions on the particular claims they will find are established by the evidence in the record. Once they do so, they may then use the

vocational expert's testimony that appropriately accounts for the impairments found by the ALJ to have been established.

> Reg. § 929(c)(4) [] instructs the ALJ to evaluate claimed limitations in part based on "the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence," and with the consideration of a symptom as contemplated in the regulations, which require a reasonable relation between the symptom and a medically determinable impairment.

*Id.* at 555.

The ALJ reviewed and summarized the medical records from Concern Counseling Services in her opinion. R. 15-17. The records span over five years from April 2015 through September 2020. *Id.*; 545-681. The opinion discusses the initial psychiatric evaluation by Barbara L. Gross, D.O., Plaintiff's diagnosis of ASD, ADHD, PTSD, anxiety disorder, and noted that Plaintiff was given a GAF score of 50 at that time. R. 15-16. The ALJ's review is a fair representation of the mostly unremarkable records of Mr. Podguski's treatment. He was consistently compliant with his medication, experiencing no side effects. He did not have problems sleeping, he exhibited a good sense of humor, and had normal mental status examinations. *Id.*

The ALJ likewise thoroughly discussed the Plaintiff's consultative examination by Gregory Coleman, Psy.D., administered in March 2018. R. 16. Dr. Coleman administered the Wechsler Adult Intelligence Scale (WAIS IV) test to Mr. Podguski, which revealed an average range of intelligence. R. 635-40. The ALJ also included Dr. Coleman's findings on his mental status examination: "cooperative and oriented to person, place and time; he had an appropriate appearance, coherent and goal-directed thought process, average range cognitive functioning, neutral mood, flat affect, and fair-

to-good insight and judgment; and he had intact attention and concentration, and mildly impaired recent and remote memory." R. 16.

The ALJ gave great weight to the opinion evidence of Dr. Coleman, along with an earlier opinion by Sharon Becker Tarter, Ph.D., the state agency's psychological consultant, and a final opinion by Billings S. Fuess, Ph.D., the Social Security Administration's medical examiner, which was solicited by the ALJ. R. 17. The ALJ discussed all three experts' opinions in depth:

- In September 2015, Dr. Tarter opined that the claimant has mild difficulty with performing activities of daily living, and moderate difficulty with maintaining social functioning and maintaining concentration, persistence or pace; he had no episodes of decompensation, each of extended duration; and he can perform simple, routine, and repetitive tasks, maintain socially appropriate behavior, and sustain an ordinary routine and adapt to routine changes without special supervision (Ex. 1A) (R. 95-96).
- Dr. Coleman opined that the claimant has no difficulty with understanding, remembering, and carrying out simple and complex instructions, and making judgments on simple and complex work-related decisions; and moderate difficulty with interacting appropriately with the public, supervisors, and coworkers, and responding appropriately to usual work situations and to changes in a routine work setting. (Ex. 7F) (R. 635-40).
- Dr. Fuess opined that the claimant has no difficulty with understanding, remembering, and carrying out simple and complex instructions, and making judgments on simple and complex work-related decisions; mild difficulty with interacting with supervisors, and responding appropriately to usual work situations and to changes in a routine work setting; and moderate difficulty with interacting appropriately with the public and coworkers. (Ex. 10F) (R. 659-69).

R. 17. I find that the ALJ's assessment of these three opinions is reasonable. In his testimony Mr. Podguski stated that he does chores around the house, reads, watches television, and plays video games. R. 40. He cooks dinner for the family. R. 46. He takes

care of his cat, and only "sometimes" needs reminding to clean the litter box or make sure it has food. R. 40-41. He stays home alone, and visits his uncle. R. 42-43. He said he can "stay focused pretty well on a single task, but if too many tasks are given to me, or if I am trying to do something and people give me too many suggestions, it gives me a headache, and I lose focus." R. 44.

The ALJ took Mr. Podguski's impairments into account when she included in the RFC limitations of, "unskilled, simple, routine tasks; simple decisions; occasional changes in the workplace; and occasional interaction with coworkers and supervisors and no direct public interaction." R. 14. The limitations account for the restriction that Mr. Podguski described, he can do simple and routine tasks, with only occasional disruptions.

Mr. Podguski's discussion of why he believes the ALJ erred is not helpful. He merely says that the ALJ should have used the hypothetical that resulted in a finding by the VE of work preclusion as the correct one. He suggests that a "treating source's opinion" should be given "controlling weight when supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record," an accurate state of the law at the time the claim was filed. *See* 20 CFR § 404.1527(c)(2). He goes on to assert that an ALJ may not reject a treating physician's opinion in favor of "speculative inferences from medical reports" or substitute the ALJ's own credibility judgments. Then he leaps directly to his conclusion:

> As set forth hereinabove, the findings in the records of Concern as treating provider are entitled to controlling weight. Those findings confirm the symptoms reported by the Plaintiff identified hereinabove regarding his need to be reminded frequently in order to stay on task would prevent the Plaintiff from performing any substantial gainful activity.

Pl. Br. at 6. But nowhere in the argument does Plaintiff point to any specific record of Concern Counseling that makes this finding—that Plaintiff would need to be reminded so frequently to stay on task that he is prevented from handling any kind of job. My review of the record finds none either, which may explain why none is cited. It is necessary to demonstrate, not just assert, that the ALJ erred. Demonstration calls for careful citation to the evidence, not just a conclusory assertion that leaves the judge to search through hundreds of pages of records to see if the assertion is so. *See United States v. Shulick*, 18 F.4th 91, 113 (3d Cir. 2021) ("Judges are not like pigs, hunting for truffles buried in the record.") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (internal quotation marks and citation omitted)). I have reviewed the record and find no error.

I am satisfied that the ALJ properly considered the evidence when determining Mr. Podguski's claim. She thoroughly reviewed the medical record and the opinions, considered the evidence from various health care providers, considered the testimony and other evidence of record, and explained her reasons for her findings, which accounted for Mr. Podguski's impairments. R. 15-19. The Commissioner recounts the record evidence that supports the ALJ's decision. Com. Res. at 7-8. Plaintiff cites no medical evidence that contradicts the findings made by the ALJ.

## CONCLUSION

Because I find no error, I will affirm the decision of the ALJ and dismiss the appeal. I will enter an Order and Judgment accordingly.

**BY THE COURT:**

*s/Richard A. Lloret*
**RICHARD A. LLORET**
**UNITED STATES MAGISTRATE JUDGE**